All right, next case is Bishop v. United States, 23-4020. I mean, you don't have to go back. Good morning, your honors, and may it please the court. My name is Dan Witte. I represent Michael Bishop Appellant and Slim Ventures. I'm just going to say my clients or Bishop from now on for shorthand when I'm referring to them. And also, there's many acronyms here. So monetized installment sale, I'm just going to use MIS. And any time I refer to the government, I'm talking about, or the IRS, I'm referring to the government, the IRS, and its various lead development center and office of promoter investigations, et cetera. And so unless I need to differentiate again, shorthand there. A couple of housekeeping items real quick before I launch into anything else that I think are quite important. First of all, I'd like to reserve seven minutes for rebuttal, if I may. And also, I wanted to mention that there are two cases that came out just before the reply brief in this case. I did manage to mention one of them. I mentioned both of them, but they played out. So I want to mention them because I think they're extremely important. And in fact, I think this case is kind of a version of those cases, except applied to the IRS. The first one is 30, and I wish they had been there from the start. Because if they had been, the district court would have heard a lot about those cases, and they would have been feathered through my briefing in a very different way. So I can't emphasize that enough. The first one is 303 Creative LLC v. Alenis. It's a 600 USC 570. I'm sure you're familiar with that case here. And that went to the Supreme Court. We believe that this particular case vindicates a lot of the arguments that we've made about how the Supreme Court has emphasized that commercial speech receives strict scrutiny and heightened, I guess, protection from what I think most people would say in the past some of the cases suggested. So really emphasizes a lot about, and I quoted them in a footnote that's in the reply brief, but I think that really vindicates a lot of our approach about how commercial speech is protected, and why it wasn't protected enough here, et cetera, et cetera. The second case that I would like to point out, which we did cite the Western District of Louisiana. This is Missouri v. Biden. 203 Westlaw 433-5270. It has progressed now up to the Fourth Circuit. It went to 2023 Westlaw 6425-697, and it has, in fact, now been accepted for cert by the U.S. Supreme Court. And that- Could you give us a 28J letter that lays out these citations so we have that? Yes, Your Honor, I can follow up with that. The Biden case is cited, but it doesn't have the Fourth or the Supreme Court cert granted. And what we would argue is that this, as you may know a little bit about the Missouri v. Biden case because it's been fairly publicized, but it talks about the First Amendment, and it applies the Bantam Books line of precedent and thinking and investigatory and chilling theories that we have invoked here. We had White v. Lee, which was 227 Federal 3rd, and we like to quote 1226 to 1228 about would the type of investigation conducted or the conduct chill or silence a person of ordinary firmness. In other words, it's an objective standard about whether someone would be chilled or not. And so- So at this point, though, you concede that nothing that's happened thus far has ordered you to curtail, stop speaking, or compelled you to speak. Actually, no, we wouldn't say that exactly. What we would say is, and that's one reason I'm bringing up Missouri v. Biden is because there's also a lot of discussion in there about what constitutes pressure, where someone is- Well, I'm not talking about chilled speech. I'm talking about a direct prohibition on speech or a direct order to speak in a way you don't want to. So yeah, actually, we think they de facto did that. Because what the agent said, if you look at the agent's affidavit and all the surrounding information about it, they- Normally, what happens on an IRS audit or a summons is that you have a particular incident, a particular tax return, a promoter who gave somebody a form or helped them prepare it, and it was actually turned into the IRS. That's conduct, right? What you don't see, and what I don't think the IRS or we were able to find a single case that says this, that you can go and talk to, you can basically identify what someone said on the internet, and then conduct an audit based just on that, where they haven't actually- You're not actually auditing a return. You're not auditing where a complaint, a criminal complaint, or a key TAM action result, or you didn't go as an IRS agent out and look and say, oh, there's all these conservation easements out there in Atlanta. We're going to go check them all out. That's objective information. When those conservator- Did the agent here not have objective information that prompted his investigation? No, what he had was he- I mean, this is what it says right in the paragraphs for the affidavit. Actually, affidavit, it is an affidavit, which is another issue. It's a declaration. I mean, we have no idea who this person is. OK, in the agent's declaration. I'm sorry? In- correct it to say declaration. OK, yes. So in the first three paragraphs of that declaration, it's clear from what the agent themselves says, Agent Bauer, a pseudonym, says in that affidavit. The reason we're going after this is we're not So we saw that, and then we decided to backtrack from that and start looking around for whatever we could about this individual. Well, what it says is there was some promotional material that raised a concern with us that this might be an illegal product or attempt under the tax laws, and we want to investigate it further. What's wrong with that? No, well, I respectfully disagree with the characterization a little bit. So first of all, what's not in the affidavit is the- is Agent Bauer saying, you know, we got a complaint from someone where we audited- we picked a return at random, and we decided to start auditing it. And we need the materials that relate to what's in there. What he did was he looked at what was on the internet. He looked at the executive summary, and he goes, oh, we don't like what's in there. So we're going to go back- we're going to backtrack. We're going to serve- we're going to carpet bomb eight subpoenas, all of which aren't tailored in any way. If you look at those subpoenas, they say we want everything for five years, every scrap of paper. Well, for five years, it's tailored, isn't it? It's tailored with time. Time-wise, it is. Substantively in scope, it is not. Because what they're doing is they're saying, we're going to- they dropped eight of those subpoenas. Six of them have already panned out to be completely without merit. Because there was never any nexus to a return. There was never any nexus to someone saying, I got scammed, or I was misled by a promoter, or anything. It's not based off an actual incident. Nor is there any claim in the affidavit or in the papers. Nor does the IRS even dispute that that's what they've done. That they have this program where they just go around surfing without working from an actual incident. And if you look at the case law- There's no requirement that they do that. I mean, let me give you an example. There's- I forget what it's called, like back page or something. It's something on the internet. And often, the FBI agents will look at it, and it suggests to them that someone might be dealing drugs, or might be involved in prostitution, or even worse, child trafficking. And then they take steps to investigate whether their suspicion is warranted. Isn't this like that? No, and the reason it's not is because some speech is inherently criminal or suggests criminal intent. Merely analyzing an IRS code that is written in Babylonian is hard for anybody to understand under the best of circumstances. And making a particular pitch about what you think it means is like academic and attorney activity. It's not something that is inherently criminal. So sure, if someone is out there saying, you know, here's a kit for sale, or my services are available in suite 29, that's inherently illegal speech. And so you have to have probable cause before you can have an IRS summons issue? You don't have to have probable cause. So this brings up another whole point to this. Powell and Clark were designed to address a specific question. They addressed the question of, does the IRS have to observe the Fourth Amendment? And Powell's decision is essentially a decision that says, no, you don't have to have the Fourth Amendment. We're going to come up with a different standard. It's kind of a nexus standard. It's a Fourth Amendment light. It doesn't require you to know that something's wrong, but it does require you to have an incident, or a return, or something you're working off of. And then you have a nexus of asking about that. The First Amendment was not the concern in Powell. The First Amendment obviously has different considerations, as do, for example, attorney-client privilege. For example, I cited Highland Financial. And Highland Financial, which was from the Second Circuit, said, yes, there are certain theories, certain avenues of challenging under summons that go to nexus. And then there are other things, like attorney-client or First Amendment, that are other avenues of theory that can be challenged under the Second Amendment, or I'm sorry, under other avenues besides just meeting the two Powell criteria. So the entire Powell dynamic was designed to attract, or to address, the Fourth Amendment and the nexus issues. It in no way substitutes entirely separate avenues and theories for First Amendment and other kinds of theories. I guess I need to reserve my time. Well, you wanted seven minutes, but that clock is yours. So you're down to 2 of 6 if you want to reserve that. Right, I want to reserve it. All right, thank you. Thank you. May it please the Court, my name is Ivan Dale on behalf of the United States. Maybe that microphone is detained. I think you can actually listen. Can you hear me now? Is that better? That's better. Yeah, hi. My name is Ivan Dale. I represent the United States in the nominal federal defendants in the case. In a summons enforcement proceeding, the question is whether the IRS is acting in good faith and complies with applicable statutes. If it is, it's entitled to enforcement of the summons. In this case, there is no evidence whatsoever of the improper purpose alleged by appellants. There is no evidence that the issuance or enforcement of the summonses in this case in any way has the purpose or effect of restricting appellant's freedom of speech. Mr. Bishop's declaration says nothing about his speech. What he's concerned about. You mean Agent Bauer? Agent Bauer? No, our opponent in the case has a declaration. That's the only evidence that they proffered, is the declaration of their client. And it says nothing about his speech being curtailed. There's nothing in that about his speech being curtailed. So everything about freedom of speech curtailment is just advocacy. There's no evidence whatsoever. In any event, this investigation isn't about speech. Narys doesn't care what, if Mr. Bishop wants to advocate for a particular tax treatment of monetized installment sales, how about it? Like, nobody cares, honestly. I mean, what this case is about is, and the speech that's being referenced, is an actual business proposal. And the business proposal says, Slim Ventures offers to purchase your assets. And you'll get paid pretty much what you were going to get paid otherwise, all up front. You'll have no other obligations. And yet, you won't have to pay taxes until 2053. Well, that's a little bit too good to be true. I mean, that is almost, it's not even a particularly complicated tax shelter. There's some notes going back and forth, but they're non-recourse. Nobody can go after the seller, and they pretty much cancel each other out. So it's just a circular flow of nothing from the perspective of the buyer and from the perspective of the seller. It's an ordinary sale. It should be taxed as an ordinary sale. But we don't know the details of this yet. But we do know that Mr. Bishop said that his lender that he uses in these transactions is SummitCrest. So we issued a summons to SummitCrest, because they're going to have relevant information. He also said that this is his primary source of income, and we know that Wells Fargo has paid a dramatic amount of interest to Slim Ventures. So it stands to reason that the money flow in these transactions is going through Wells Fargo. So it stands to reason that Wells Fargo has relevant information. And so that's relevant information. Investigating whether a promoter is participating in or organizing a strategy or plan that results in a false or fraudulent understatement of tax, that is a legitimate purpose. It's the IRS's duty to enforce that congressional statute, section 6700 of the Internal Revenue Code. So we have a legitimate purpose. We've established relevancy. There's no contrary evidence. So there's no reason to cross-examine our revenue agent in the case. I think the only other things that were brought up in the briefing were a couple of statutes, one of which was completely subsumed within the Powell test. The other one is about economic reality techniques. It doesn't bear any relevance at all to this case because we're not reconstructing. I mean, that statute is about you can't go to someone and say, show me your net worth in 2019 and show me your net worth in 2023. And if there's a difference, you must have made that much income. Unless you could do it if you had some reason. If you bought a $30 million house in the interim and you weren't making that kind of money, then that would be a reason why you could ask for those questions. I mean, here we've got plenty of reason to ask for the information that we're asking for. So that statute is not implicated. I think that pretty much covers all of the arguments that were released in the opening argument or in the briefs. But I am happy to answer any question this court has. Thank you. OK, well, with that being said, we ask that the order of the district court be affirmed. Thank you. Thank you. We'll hear from the appellate. OK, so a couple of things. First of all, this economic reality test is designed to stop exactly what happened here, which is you don't actually have any return. You don't actually have any information. You don't have any complaint. You don't have any evidence. You're simply inferring something from something nonspecific. In this case, there was some interest from a bank. That's literally all they have. And the only other thing that's in that affidavit is the agent saying that my client said that he did something. There's no notes. There's no opportunity for the court to, which my client disputed and which we said was disputed. So what the court should have done is hold a Clark evidentiary hearing and say, well, the agent says that my client said this when he was interviewed or something. Where are the notes? Where's the recording? Let's assess the credibility of these conflicting stories. But you can't just pick out what somebody said and then go, oh, from that, we're going to carpet bomb them. We're going to carpet bomb every bank they have. We're going to ask for every document they ever had. And it's not tethered to any specific complaint. It's not tailored in any way. We're not even going to have the judge look at it. The judge wouldn't look at it to even make sure it was circumscribed in some way. So that's part of the problem here, is that there's just this inference that somehow MIS was used, but the executive summary specifically has oodles of language that says it's not. This is not legal advice. You have to go talk to your attorney. It talks about all these different doctrines. This may apply in different situations under different contexts. That's something an attorney would put up on their law firm website to say, you know, I know about guns, or I know about taxes, and here's my opinion, and I'm in your corner. It's not to say, this is specific tax information or preparation for a specific person. And so in conclusion, I would just like to ask that the court vacate this, or at the very least, send it back for an evidentiary hearing and order an in-camera review. Thank you very much. Thank you, counsel. This matter will be submitted.